## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TERRI L. FOSTER<br>   on behalf of herself<br>   and others similarly situated | ) ) ) | CIVIL Action No. 2:09-cv-453 |
|      Plaintiff, | ) ) | |
|      v. | ) ) | **Electronically Filed** |
| KRAFT FOODS GLOBAL, INC., | ) ) | |
|      Defendant. | ) ) ) ) ) ) | **Jury Trial Demanded** |

## DEFENDANT KRAFT FOODS GLOBAL, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

Page

I.      INTRODUCTION ......................................................................................... 1

II.     BRIEF SUMMARY OF UNDISPUTED MATERIAL FACTS ......................................... 2

        A.      Kraft's "Salary Plus" Compensation System For Wall-to-Wall SRs ...................... 3

        B.      Plaintiff's Work History With Kraft ............................................................ 4

III.    LEGAL ARGUMENT ................................................................................... 4

        A.      Kraft's Salary Plus Compensation System Is Permissible Under
                Pennsylvania Law ...................................................................................... 5

                1.      The FWW Method:  An Overview ................................................. 5

                2.      The FWW Method Is Permissible Under The PMWA ............................... 6

        B.      Kraft's Salary Plus System Complies With The FWW Method. ......................... 11

                1.      W2W SR Hours Fluctuate From Week To Week ..................................... 12

                2.      W2W SRs Receive A Fixed Salary Regardless Of The Number Of
                        Hours Worked ......................................................................... 13

                3.      W2W SR Compensation Is Sufficiently Large ........................................ 15

                4.      Kraft Has An "Understanding or Agreement" With W2W SRs That
                        They Will Be Compensated Under The FWW Method ........................... 16

                5.      W2W SRs Received Half-Time Overtime For All Hours Over
                        Forty ........................................................................................ 19

        C.      Plaintiff Received All Overtime To Which She Was Entitled Between July
                1, 2007 And The Present .......................................................................... 19

IV.     CONCLUSION .......................................................................................... 20

TABLE OF AUTHORITIES

Page(s)

<u>Federal Cases</u>

*Anderson v. Liberty Lobby, Inc.*
  477 U.S. 242 (1986) .................................................................................................. 4

*Bailey v. County of Georgetown*
  94 F.3d 152 (4th Cir. 1996) ............................................................................... 17, 18

*Baker v. Carr*
  369 U.S. 186 (1962) ............................................................................................... 20

*Cash v. Conn Appliances*
  2 F.Supp.2d 884 (E.D. Tex. 1997) ................................................................... 12, 16

*Celotex Corp. v. Catrett*
  477 U.S. 317 (1986) ................................................................................................. 5

*Cerutti v. Frito-Lay, Inc.*
  777 F.Supp.2d 920 (W.D. Pa., March 28, 2011) ................................................. 9, 10

*Condo v. Sysco Corp.*
  1 F.3d 599 (7th Cir. 1993) ..................................................................................... 11

*Evans v. Lowe's Companies, Inc.*
  Civil Action No. 3:03-cv-0438, 2004 U.S. Dist. LEXIS 8335
  (M.D. Pa April 29, 2004) ...................................................................................... 7, 9

*Flood v. New Hanover County*
  125 F.3d 249 (4th Cir. 1997) .............................................................................. 11, 12

*Friedrich v. U.S. Computer Systems, Inc.*
  Civil Action No. 90-1615, 1996 U.S. Dist. LEXIS 775
  (E.D. Pa Jan. 23, 1996) .................................................................................... 7, 8, 18

*Garcia v. Allsup's Convenience Stores, Inc.*
  167 F.Supp.2d 1308 (D.N.M. 2001) ...................................................................... 13

*Griffin v. Wake County*
  142 F.3d 712 (4th Cir. 1998) ................................................................ 12, 16, 17, 18

*Heder v. City of Two Rivers*
  295 F.3d 777 (7th Cir. 2002) .................................................................................. 17

*Hunter v. Sprint Corporation*
  453 F.Supp.2d 44 (D.D.C. 2006) ......................................................................... 13

*Linda R. S. v. Richard D.*
  410 U.S. 614 (1973) ............................................................................................ 20

*Martin v. Allegheny Airlines, Inc.*
  126 F.Supp.2d 809 (M.D. Pa. 2000) .................................................................... 5

*Mayhew v. Wells*
  125 F.3d 216 (4th Cir. 1997) .............................................................................. 16

*Monahan v. County of Chesterfield*
  95 F.3d 1263 (4th Cir. 1996) ......................................................................... 16, 17

*O'Brien v. Town of Agawam*
  350 F.3d 279 (1st Cir. 2003) .............................................................................. 11

*Samson v. Apollo Resources, Inc.*
  242 F.3d 629 (5th Cir. 2001) ..................................................................... 5, 12, 17

*Valerio v. Putnam Assoc. Inc.*
  173 F.3d 35 (1st Cir. 1999) ................................................................................ 17

*Warth v. Seldin*
  422 U.S. 490 (1975) ............................................................................................ 20

<u>Federal: Statutes, Rules, Regulations, Constitutional Provisions</u>

29 C.F.R. § 778.2 ....................................................................................................... 12

29 C.F.R. § 778.114 .............................................. 1, 2, 3, 5, 6, 10, 12, 16, 17, 18, 20

29 C.F.R. § 778.114(a) ................................................................................... 6, 10, 16

29 C.F.R. § 778.209 .................................................................................................... 3

29 U.S.C. § 207 ........................................................................................................... 9

29 U.S.C. § 207(a) ....................................................................................................... 5

Fed. R. Civ. P. 56(c) .................................................................................................... 4

<u>State: Statutes, Rules, Regulations, Constitutional Provisions</u>

43 P.S. § 333.101 et seq. ................................. 1, 2, 5, 6, 7, 8, 9, 10, 11, 14, 18, 19, 20, 21

34 Pa. Code § 231.41 ................................................................................................ 20

34 Pa. Code § 231.43(d) .................................................................. 2, 5, 6, 7, 9, 18, 20

Other Authorities

*Turner v. Mercy Health System*
    2010 Phila. Ct. Com. Pl. LEXIS 146 (Mar. 10, 2010) ........................................................... 10

## I.   <u>INTRODUCTION</u>

On April 16, 2009, Plaintiff Terri Foster ("Plaintiff"), a former Wall-to-Wall Sales Representative for Kraft Foods Global, Inc. ("Kraft"), filed the instant lawsuit claiming Kraft failed to properly compensate her for all hours worked under Pennsylvania's Minimum Wage Act, 43 P.S. § 333.101 et seq. ("PMWA").  In addition to bringing claims on behalf of herself, Plaintiff purports to assert her claims on behalf of all Kraft Sales Representatives in Pennsylvania in the three years preceding the filing of the Complaint.  Plaintiff's Second Am. Compl., ¶ 48.  However, Plaintiff has not yet moved to certify a class in this case, and therefore this Motion shall be as to Plaintiff's claims on an individual basis.

Prior to July 1, 2007, Kraft utilized separate sales forces to sell Kraft products ("Warehouse Reps") and Nabisco products ("Biscuit Reps").  On July 1, 2007, the Company combined its Kraft and Nabisco sales forces into the new Wall-to-Wall position.  These Wall-to-Wall Sales Representatives ("W2W SRs") sold and currently sell both Kraft and Nabisco products.  At, or shortly before the time of this change, Kraft created the "Salary Plus" compensation system.  Prior to this conversion, Plaintiff was a Kraft Warehouse Sales Representative, and was paid under a different system.  Plaintiff's original Complaint alleged claims back to April 16, 2006, but in the fall of 2011, Plaintiff and Defendant settled the "Pre-Conversion" time period of this case, or all claims from April 16, 2006 through June 30, 2007.  As part of this settlement, Plaintiff dismissed her Pre-Conversion claims with prejudice, and filed an Amended Complaint, asserting only Post-Conversion Claims (July 1, 2007 through the present).  For that reason, the only claims remaining to be addressed in this instant Motion are those Post-Conversion claims involving whether Kraft's Salary Plus compensation system complies with Code of Federal Regulations section 778.114, and therefore with the PMWA.

Plaintiff claims she was improperly denied overtime after July 1, 2007 because Kraft's Salary Plus compensation system is not permissible under Pennsylvania law. Salary Plus is modeled after the fluctuating workweek method of calculating overtime on a salary, found in federal regulation 29 C.F.R. § 778.114 ("FWW method"). The PMWA allows for the use of the FWW method. 34 Pa. Code § 231.43(d). There cannot be any dispute that Kraft's Salary Plus compensation system complies with the FWW method, and therefore, with the PMWA.

Second, Plaintiff alleges that, even if Salary Plus is permissible under the PMWA, the fact that Kraft deducts W2W SRs' pay for the personal use of a company vehicle precludes Kraft's use of the FWW method and therefore of its Salary Plus program. However, this is false and this misinterprets 29 C.F.R. § 778.114.

Finally, even were Plaintiff to prevail on her arguments that Pennsylvania law does not permit the use of the FWW method and/or that Salary Plus is not in compliance with this method of calculating overtime, Plaintiffs claims still fail. Plaintiff did not work a single hour of overtime between July 1, 2007 and the end of her active employment with Kraft on July 17, 2007. As such, Plaintiff cannot pursue claims against Kraft for failure to pay overtime during this period.

## II.   **BRIEF SUMMARY OF UNDISPUTED MATERIAL FACTS**

Kraft is an international food and drink manufacturing and sales company that is engaged in the manufacturing, sales, and distribution of food and drink products. *See* Declaration of Gary Schmidt ("Schmidt Decl.") at ¶ 2. Kraft's sales representatives sell Kraft products to customers within their territories. *See* Schmidt Decl. at ¶ 3. In late 2000, Kraft acquired Nabisco, Inc., a manufacturer of cookies and crackers. At that time, Kraft had its own sales representatives responsible for selling Kraft products (Warehouse Reps) and Nabisco had its own sales

representatives responsible for selling Nabisco products (Biscuit Reps or "Direct Store Delivery (DSD) reps").[1] *See* Schmidt Decl. at ¶ 4.

In 2006, in the interest of efficiency, Kraft combined the duties of the Kraft and Nabisco sales representatives. The new sales representative position was referred to as a "Wall- to-Wall" or "W2W" Sales Representative, meaning the W2W SRs handled both Kraft and Nabisco products – or everything from "wall-to-wall" at a customer location. W2W SRs were, and are, responsible for selling, planning, ordering, distributing, merchandising, shelving, and pricing all Kraft and Nabisco products for the retail customers within their territories. *See* Schmidt Decl. at ¶ 5.

**A.    Kraft's "Salary Plus" Compensation System For Wall-to-Wall SRs**

In conjunction with the transition of Warehouse Reps and Biscuit Reps to the W2W SR position, Kraft implemented an overtime compensation system referred to as Salary Plus. Under the Salary Plus compensation system, W2W SRs are paid a base weekly salary and overtime for any hours worked over 40 in a workweek. *See* Schmidt Decl. at ¶ 6. Kraft calculates overtime in accordance with the fluctuating workweek method of calculating overtime on a salary, as described in federal regulation 29 C.F.R. § 778.114. *See* Schmidt Decl. at ¶ 7.[2] Employers across Pennsylvania (and in fact across the country) commonly use the FWW method as an alternative method of calculating overtime for qualifying salaried employees.

Prior to its implementation of Salary Plus in July 2007, Kraft developed and maintained a methodology, policy and practice by which managers communicated to its soon-to-be W2W SRs how their compensation would be affected and calculated. *See* Schmidt Decl. at ¶ 8. In fact,

---

[1]    "Warehouse" and "DSD" referred to the different delivery systems used by the two companies. *See* Schmidt Decl. at ¶ 4.

[2]    W2W SRs also receive monthly and period incentive bonuses, which are paid in accordance with 29 C.F.R. § 778.209 and are not at issue in this lawsuit.

Kraft developed a presentation entitled, "Breakthrough Salary Plus," which was given by managers to sales representatives at monthly meetings. *See* Schmidt Decl. at ¶ 8. Managers were provided with materials to assist in the implementation of Salary Plus and were prepared to handle questions from SRs regarding the changes in the compensation structure. *Id.* W2W SRs, after receiving this training, signed acknowledgement forms indicating their understanding of the Salary Plus system.

## B.     Plaintiff's Work History With Kraft

Plaintiff was hired by Kraft on February 2, 1981.  Prior to her conversion to a W2W SR and during the relevant time period, Plaintiff worked as a Warehouse Rep. *See* Schmidt Decl. at ¶ 9.

Plaintiff went out on short-term disability leave on July 18, 2007 – 17 days after the implementation of the Salary Plus compensation system, and has been out on long-term disability leave since January 2, 2008. *See* Schmidt Decl. at ¶ 10.  Plaintiff was terminated from her employment with Kraft on January 24, 2010. *Id.*  Plaintiff never worked any overtime hours after the conversion to Salary Plus. *See* Schmidt Decl. at ¶ 11; Statement of Undisputed Facts at ¶ 18.

## III.     LEGAL ARGUMENT

Summary judgment is warranted where the pleadings, depositions, and discovery responses, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A factual dispute is "material" if it might affect the outcome of the suit under applicable law.  A factual dispute is "genuine" only if there is a sufficient evidentiary basis which would allow a reasonable fact-finder to return a verdict for the non-moving party. *See Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Martin v. Allegheny Airlines, Inc.*, 126 F.Supp.2d 809, 814 (M.D. Pa. 2000).  Where the nonmoving party has the burden of proof, the moving party need only point out to the court that "the nonmoving party has failed to make a sufficient showing on an essential element of her case ..." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

A.    **Kraft's Salary Plus Compensation System Is Permissible Under Pennsylvania Law**

Plaintiff's argument that Kraft's Salary Plus compensation system is not permissible under the PMWA is contrary to well-established authority.

1.    The FWW Method:  An Overview

Both the federal Fair Labor Standards Act, 29 U.S.C. § 207(a) et seq. ("FLSA") and the PMWA require employers to pay non-exempt employees an overtime premium of "time and one-half" for all hours worked in excess of forty hours in a workweek.  The U.S. Department of Labor has set forth various methods of calculating overtime compensation to suit different employer needs, while still complying with the FLSA. *Samson v. Apollo Resources, Inc.*, 242 F.3d 629, 633 (5th Cir. 2001).  One such method is found in federal regulation 29 C.F.R. § 778.114 and is commonly referred to as the fluctuating workweek method of calculating overtime, or the FWW method.  The PMWA similarly allows for the FWW method.  34 Pa. Code § 231.43(d).  The FWW method states, in part,

> An employee employed on a salary basis may have hours of work which fluctuate from week to week and the salary may be paid him pursuant to an understanding with his employer that he will receive such fixed amount as straight time pay for whatever hours he is called upon to work in a workweek, whether few or many.  Where there is a clear, mutual understanding of the parties that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, rather than for working 40 hours or some other fixed weekly work period, such a salary arrangement is permitted by the Act if the amount of

> the salary is sufficient to provide compensation to the employee at
> a rate not less than the applicable minimum wage rate for every
> hours worked in those workweeks in which the number of hours he
> works is greatest, and if he receives extra compensation, for all
> overtime hours worked at a rate not less than one-half his regular
> rate of pay.

29 C.F.R. § 778.114(a).

Under the FWW method, an employee's "regular rate" for purposes of calculating

overtime fluctuates on a weekly basis because it is based on the total number of hours worked

during the workweek, as opposed to a standard 40 hours. Indeed, the fundamental premise of

Section 778.114 is that there is no "regular" workweek. An employee's weekly base salary is

considered the straight-time compensation for all hours worked during the week. An employee's

overtime rate is then calculated by dividing the "regular rate" (total compensation received

divided by all hours worked) in half. This results in a premium rate, i.e., the additional half-time,

that the employee receives for all hours worked over 40. The FWW method complies with the

FLSA and the PMWA's overtime requirement because the employee's weekly salary is intended

to compensate Plaintiff for all hours worked in a workweek – overtime hours included. Thus, the

employee receives the "time" for each hour worked by receiving a weekly salary and is only

entitled to the "and a half" of her regular rate for hours worked in excess of forty. Once the half

is paid, the employee has received the full time and one-half for all overtime hours.

### 2.    The FWW Method Is Permissible Under The PMWA

It is well established that the PMWA, specifically the overtime liability exception

enumerated in Section 231.43(d), permits the use of the FWW method. Section 231.43(d)

provides that an employer shall be deemed *not* to have violated the overtime provisions of the

PMWA if:

> Under an agreement or understanding arrived at between the
> employer and employee before performance of the work, the
> amount paid to the employee for [overtime] . . .
>
> (3) is computed at a rate not less than 1 ½ times the rate
> established by the agreement or understanding as the basic rate to
> be used in computing overtime compensation thereunder.

In fact, two federal district courts in Pennsylvania have expressly approved of employer compensation plans modeled after the FWW method, and Pennsylvania's Labor Law Compliance Division ("LLCD") has issued an opinion letter based on the assumption that the PMWA permits the use of the FWW method. *See Friedrich v. U.S. Computer Systems, Inc.*, Civil Action No. 90-1615, 1996 U.S. Dist. LEXIS 775 (E.D. Pa Jan. 23, 1996); *Evans v. Lowe's Companies, Inc.*, Civil Action No. 3:03-cv-0438, 2004 U.S. Dist. LEXIS 8335 (M.D. Pa April 29, 2004); LLCD Letter dated February 26, 2003.[3]

In *Friedrich*, the employer paid employees a bi-weekly salary and compensated them for any hours worked in excess of forty in a workweek using a variable overtime rate under the FWW method. The variable overtime rate was calculated by dividing the employee's weekly salary by the number of hours worked that week and then dividing the resulting hourly rate in half. **It was undisputed that the employer's overtime compensation plan, which was modeled after the FWW method, complied with the substance of Section 231.43(d).** *Friedrich, supra,* 1996 U.S. Dist. LEXIS 775 at *28. The court focused on whether the employees "understood or agreed" to the employer's alternative compensation plan and its method of computing overtime, as is required by Section 231.43(d). The court held that, because the employees had the requisite understanding, the employer had not violated the PMWA by using a compensation plan modeled after the FWW method.

---

[3]   A copy of the LLCD letter dated February 26, 2003 is attached as Exhibit 1 to this Motion.

Prior to finding that the employer's compensation system complied with subsection **(d)** of Section 231.43, the court analyzed the employer's compensation plan under subsection **(b)** of the same regulation. Plaintiff may attempt to assert *Friedrich* as support for the argument that the FWW method is not permissible in Pennsylvania because the court held that subsection **(b)** was not applicable to the employees or the employer's compensation plan. Subsection **(b)** expressly permits the use of the FWW method for employees "paid a flat sum for a day's work" **or** "for doing a particular job without regard to the number of hours worked."[4] While the court agreed that the employees were compensated in a manner consistent with subsection **(d)** of Section 231.43 (i.e., the FWW method), it held subsection **(b)** did not apply because that subsection encompasses only "employees who perform duties as independent contractors, working on specific, discrete projects such as painting, construction, or other services." Since the employees in *Friedrich* did not perform this type of work, the court ruled that subsection **(b)** was inapplicable to the employer's compensation plan.

However, as discussed above, although the court in *Friedrich* held that subsection **(b)** did not apply to the employer's compensation plan, it concluded that the employer's compensation plan complied with subsection **(d)** of Section 231.43. In order to comply with the PMWA, an employer must comply with **either** subsection **(b)** or subsection **(d),** but not both. Because the employer in *Friedrich* complied with subsection **(d)** (as does Kraft), it is irrelevant whether they also complied with subsection **(b).** Thus, any argument by Plaintiff that *Friedrich* does not permit the FWW method misstates the conclusions reached by the court.

_____

[4] Specifically, Section 231.43(b) provides,

[i]f an employee is paid a flat sum for a day's work or for doing a particular job without regard to the number of hours worked in the day or on the job, and if he receives no other form of compensation for his services, his regular rate is determined by totaling all of the sums he received at such day rates or job rates in the workweek, and then dividing by the total hours actually worked. He is then entitled to half-time pay at this rate for all hours worked in excess of forty in the workweek.

Similarly, the court in *Evans v. Lowe's Companies, Inc.* also looked at the employer's compensation plan and whether it fell within the overtime liability exception enumerated in Section 231.43, subsection (d). *Evans v. Lowe's Companies, Inc., supra,* 2004 U.S. Dist. LEXIS 8335. Although the court ultimately denied the employer's motion for summary judgment, the court did not take issue with the fact that the employer was paying overtime under a "Salaried Plus Overtime Plan," which was modeled after the FWW method. In determining whether issues of fact existed for the purpose of summary judgment, the court only looked at whether the employer had satisfied subsection (d)'s requirement that it have an "agreement or understanding" with employees to use an alternative compensation plan. Due to conflicting evidence, the court held issues of fact existed and denied summary judgment. Importantly, however, **the court did not take issue with the employer's use of a compensation plan modeled after the FWW method.**

The third court to analyze the FWW in Pennsylvania is the Western District, in *Cerutti v. Frito-Lay, Inc.*, 777 F.Supp.2d 920 (W.D. Pa., March 28, 2011). The court in *Cerutti* did not decide the issue of the legality of the FWW in Pennsylvania, and instead stated that the employer needed to pay overtime at one and one-half the employee's regular rate of pay under Section 231.43(d).[5] Kraft does not disagree with this statement; it has paid overtime at one and one-half of the W2W SRs' regular rates, pursuant to the FWW method. The *Cerutti* opinion fails to square its finding with the fact that federal law, just like the PMWA, requires payment of overtime at time and one-half (*see* 29 U.S.C. § 207), and yet federal regulations explicitly permit

---

[5]     The court noted twice in its Memorandum Opinion explaining its partial denial of Defendant Frito-Lay's Motion for Partial Summary Judgment that it was not deciding the FWW issue. First, it stated "Therefore, the court need not predict whether Pennsylvania courts would recognize the FWW method of OT payment." Later, the court stated "With respect to whether Frito-Lay's method of compensating the Plaintiffs according to the FWW would be lawful in Pennsylvania, the court finds this question is irrelevant..." *Cerutti v. Frito-Lay*, 777 F.Supp.2d at 945. Accordingly, the *Cerutti* court never decided the legality of the FWW method in Pennsylvania.

the use of the FWW method (29 C.F.R. § 778.114). This is because the two notions are not incompatible. As explained above, under the FWW method, employees are paid overtime hours at time and one-half. The employee receives the "time" from the salary covering all of the hours they work during the week, whether straight or overtime hours. The employee then only needs the "and-a-half" to meet the one and one-half time requirement. *See* 29 C.F.R. § 778.114(a).

Further, the *Cerutti* decision relied on a case, *Turner v. Mercy Health System*, 2010 Phila. Ct. Com. Pl. LEXIS 146 (Mar. 10, 2010), that held that an employer may not agree with its employees to violate the PMWA. *Turner*, 2010 Phila. Ct. Com. Pl. LEXIS at *13. Again, an agreement to pay employees pursuant to the FWW is not an agreement to violate the law. Both federal law and the two cases to have interpreted the PMWA in light of the FWW find it a legal and valid method of compensation.

Finally, the *Cerutti* court seemed to place some emphasis on the fact that Frito-Lay's employees were commissioned sales persons, and therefore not only did their weekly compensation fluctuate, but the employees could not agree in advance to a salary if they did not know what it would be week to week.[6] *Cerutti*, 777 F.Supp.2d at 943-44. Unlike the employees in *Cerutti*, Plaintiff was paid only a flat weekly salary; she was not paid any commissions.

In addition to this case law, Pennsylvania's LLCD has issued an opinion letter based on the assumption that the PMWA permits the use of the FWW method. The LLCD is the division of the Department of Labor & Industry that interprets and enforces Pennsylvania's laws regulating the employer and employee relationship. In its letter of February 26, 2003, the LLCD confirmed that prior statements regarding the use of the FWW method in Pennsylvania had been

---

[6]    This focus misunderstands the compensation system at issue in *Cerutti*, which involved a non-fluctuating salary in addition to commissions, and the FWW method, which focuses only on the salary portion of the compensation. It nevertheless distinguishes Frito-Lay's RSR compensation system from Kraft's W2W SR Salary Plus program.

non-binding "assumptions" or "predictions" that would not override any judicial interpretation. It is nevertheless of note that when the LLCD was asked to make such an assumption or prediction one way or the other, it assumed and predicted that if the courts were to decide the issue, they would decide that the Pennsylvania statutory scheme allows for the use of the FWW method. *See* LLCD Letter of February 26, 2003.

Thus, the courts and administrative agencies in Pennsylvania that have addressed the issue of whether the FWW method is a permissible method of calculating overtime have **uniformly upheld its use**. There are no contrary state or federal court opinions that explicitly decide the issue for salary-only employees such as Kraft W2W SRs. As such, the FWW method, and therefore Kraft's Salary Plus compensation system, comply with the overtime provisions of the PMWA.

**B.**    **Kraft's Salary Plus System Complies With The FWW Method.**

In order to properly utilize the FWW method, five discrete criteria must be established:

    (1)    the employee's hours fluctuate from week to week;

    (2)    the employee receives a fixed, weekly salary, regardless of the number of hours worked that week;

    (3)    the salary is sufficiently large to assure that no workweek will be worked in which the employee's average hourly earnings from the salary fall below the minimum hourly wage rate;

    (4)    the employee clearly understands that the salary covers whatever hours the job may demand in a particular workweek (however many or few); and

    (5)    the employee receives a 50 percent overtime premium in addition to the fixed weekly salary for all hours in excess of 40 worked that week.

*O'Brien v. Town of Agawam*, 350 F.3d 279, 287-88 (1st Cir. 2003) (footnote omitted)(abrogated on other grounds); *Flood v. New Hanover County*, 125 F.3d 249, 251-252 (4th Cir. 1997); *Condo v. Sysco Corp.*, 1 F.3d 599, 601-602 (7th Cir. 1993).

An employee alleging an improper application of the FWW method bears the burden of proving the employer failed to properly administer it. *Cash v. Conn Appliances*, 2 F.Supp.2d 884, 896 (E.D. Tex. 1997) (the employee bears the burden of proof because the FWW method is not an exemption to the FLSA's overtime requirements, it is simply an alternative method of complying with it (*citing Griffin v. Wake County*, 142 F.3d 712, 715 (4th Cir. 1998)); *Samson, supra*, at 636; *see also* 29 C.F.R. § 778.2 (stating subpart 778 does not include any specific exemptions to the overtime or minimum wage payment requirements of the FLSA).

      1.     <u>W2W SR Hours Fluctuate From Week To Week</u>

The first criteria for use of the FWW method is that employees compensated under this method must have work schedules that fluctuate on a weekly basis. The FWW method does not "require an unpredictable schedule" . . . merely that the schedule fluctuates. *Griffin,* 142 F.3d at 715. *Griffin* involved EMTs whose schedules fluctuated in a predictable manner – they worked either 48 or 72 hours in any given week throughout the year. In essence, they worked both a predictable number of base hours and a predictable amount of overtime, though the amount of overtime varied in any given pay period. *Id.* Similarly, in *Flood v. New Hanover County*, *supra*, the employees worked alternating 48.3, 56.3, 64.45, and 72.45 hour workweeks. The court held that although the employees worked a seemingly "fixed schedule," alternating workweeks were consistent with Section 778.114. *Flood, supra*, at 253.

When Kraft began educating its soon-to-be W2W SRs about Salary Plus in June 2007 (prior to its July 1, 2007 implementation date), these employees attended a training session wherein Salary Plus was explained in detail. At the training session, future W2W SRs were told that their weekly hours worked would fluctuate and that they would receive "Plus" earnings (i.e.,

overtime) for any hours worked over 40 in a workweek.  One of the slides shown in the training session specifically covered fluctuating work schedules:

> Q. Am I expected to get all of my work done in 40 hours?
>
> A.  No.  It is expected that your hours each week will vary based upon a number of factors.  In the event you work over 40 hours in a week, you will get paid 'Plus' for all hours worked over 40.

*See* Schmidt Decl. at ¶ 8.  Although Plaintiff never worked any overtime hours under Salary Plus before going on disability leave on July 18, 2007, her hours still fluctuated.  Plaintiff's time records for July 2007 show that she worked 36.25, 34.50, and 19.50 hours per week.  *See* Schmidt Decl. at ¶ 13; Statement of Undisputed Facts at ¶ 4.  In light of Plaintiff's hours worked and prevailing precedent, it is clear that Plaintiff's hours fluctuated sufficiently to satisfy the FWW method.

      2.      <u>W2W SRs Receive A Fixed Salary Regardless Of The Number Of Hours Worked</u>

To properly utilize the FWW method, one of the requirements is that the employee receive a fixed, weekly salary, regardless of the number of hours worked that week.  Thus, deductions to employee pay are generally not permitted when the deduction is tied to the number of hours an employee works.  *Hunter v. Sprint Corporation*, 453 F.Supp.2d 44, 60-61 (D.D.C. 2006);[7] *Garcia v. Allsup's Convenience Stores, Inc.*, 167 F.Supp.2d 1308 (D.N.M. 2001).  This

---

[7]      In reaching this conclusion, the *Hunter* court relied on three Department of Labor ("DOL") Opinion Letters.  In the first opinion letter, the DOL explained that with limited exceptions for "disciplinary deductions" (the example given being an employee sent home from work because of drunkenness) – "deductions for absences for personal business or routine sickness generally *may not* be made from the salary of an employee paid on a fluctuating workweek basis." Op. Letter of the Wage & Hour Div. (May 28, 1999).  In the second opinion letter relied upon by the court in *Hunter*, the DOL advised that, when an employer pays overtime using the FWW method, "deductions may be made from vacation or sick leave banks because of absences for personal reasons or illness" *but* wage deductions remain impermissible under the FWW method when "there is no paid leave to substitute for employee absences." Op. Letter of the Wage & Hour Div. (May 10, 1999).  The third DOL opinion letter the court found persuasive stated, "[an employer] may not make full day deductions from the salary of its fluctuating workweek employees when the employee has exhausted his or her sick leave bank or has not yet earned enough leave to cover the absence." Op. Letter of the Wage & Hour Div. (May 12, 2006).

is because, under the FWW method, the employee's weekly salary is intended to cover all hours worked, whether they be few or many.

Plaintiff argues that, even if the FWW method is permissible under the PMWA, Kraft has a policy of deducting W2W SR pay for the personal use of a company car (hereinafter referred to as "car deduction") that precludes the use of the FWW method because the car deduction precludes employees from receiving a "fixed, weekly salary." Plaintiff was provided with a company vehicle that she used for both personal and business purposes. *See* Schmidt Decl. at ¶ 14. For the personal use of this vehicle, Kraft deducted $27.69 from her weekly pay. *Id.* As stated above, Plaintiff worked hours of 36.25, 34.50, and 19.50 per each week she worked under the Salary Plus system. *See* Schmidt Decl. at ¶ 13; Statement of Undisputed Facts at ¶ 4. For each of those weeks, regardless of her hours, she received a salary of $853.37. *See* Schmidt Decl. at ¶ 12; Statement of Undisputed Facts at ¶ 5. She received this salary, despite any fluctuation in hours.

There is **no** provision of the FWW method or any case law or other authority that prohibits an employer from deducting employee pay for items **not** tied to the number of hours worked. Instead, the regulation itself states only that the salary must cover all hours worked, whether few or many, and cases have used the word "deduction" **in this context only** - and have stated employers may not make deductions for hours not worked. Plaintiff tries to extrapolate from this a rule that employers may not make **any** deductions, but there is simply no authority for this proposition.

Further, employers routinely make all types of deductions from the compensation of employees who are paid on a fluctuating workweek basis, including federal and state taxes, social security taxes, health insurance, life insurance, 401k plans, charitable contributions, etc. A

deduction for the personal use of a company vehicle is certainly more akin to these types of deductions than a deduction tied to the number of hours worked.

If Plaintiff's theory were correct, all deductions, including those tied to taxes, health insurance, life insurance, etc., would be impermissible under the FWW method. This is certainly not within the scope of the FWW method's requirement that employees be paid a fixed, weekly salary regardless of the number of hours worked. In fact, such a requirement itself would violate the law, as employers are legally required to take many of these deductions.

Finally, the car deduction was the same amount each week, as was Plaintiff's salary. Therefore, even accounting for the car deduction, Plaintiff received the same fixed amount each week; in each of the three weeks Plaintiff worked under the Salary Plus program, she received a salary of $825.68 after deduction of the car allowance. *See* Statement of Undisputed Facts at ¶¶ 6-7. Kraft could just as easily have set the salary at $825.68 per week (to take into account the $27.69 deduction), instead of $853.37 per week, and not charged W2W SRs for their personal use of the vehicle; the fact it chose to itemize this for the W2W SRs is a distinction without a difference in terms of the FWW method requirements.

### 3.   W2W SR Compensation Is Sufficiently Large

The third FWW method element that must be satisfied is that sums paid to W2W SRs must be "sufficiently large to assure that the employee's average hourly earnings per week satisfy the applicable minimum hourly wage rate." For the time period starting July 1, 2007, Plaintiff received a guaranteed salary of $853.37. *See* Schmidt Decl. at ¶ 12. As of July 1, 2009, Pennsylvania's minimum wage rate rose to $7.25 per hour. *See* Statement of Undisputed Facts at ¶ 8. Plaintiff would need to work over 117.5 hours each week in order to even come close to

the minimum wage rate at her current salary. This would break down to nearly 17 hours per day, seven days per week. Plaintiff has not argued, let alone submitted evidence, that this occurred.

In fact, the evidence shows that in her first week, she worked 36.25 hours for her $853.37 salary. *See* Schmidt Decl. at ¶¶ 12-13; Statement of Undisputed Facts at ¶¶ 4-5. This is the equivalent of an hourly wage of $23.54. In her second week, she was paid the same $853.37 for a total of 34.50 hours. *Id.* This weekly salary is the equivalent of an hourly wage of $24.74. For her last week worked under the Salary Plus system, Foster received the equivalent of an hourly wage of $43.76 for the 19.50 hours she worked that week. *Id.* Plaintiff's compensation is more than sufficiently large to satisfy Pennsylvania's applicable minimum hourly wage rate.

### 4. Kraft Has An "Understanding or Agreement" With W2W SRs That They Will Be Compensated Under The FWW Method

Section 778.114 is specific as to what the employee must understand before the FWW method may be used. Section 778.114 clearly states that, if the FWW method is to be used, the employer and employee must have reached "a clear mutual understanding . . . that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, rather than for working 40 hours or some other fixed weekly work period." *See* 29 C.F.R. § 778.114(a); *Griffin*, 142 F.3d at 716 (reading the clear understanding requirement as only encompassing the fact that the fixed salary was compensation for all hours that the employee worked); *Cash*, 2 F.Supp.2d at 907 (same). "[T]he existence of such an understanding may be 'based on the implied terms of one's employment agreement if it is clear from the employee's actions that he or she understood the payment plan in spite of after-the-fact verbal contentions otherwise." *Mayhew v. Wells*, 125 F.3d 216, 219 (4th Cir. 1997); *Monahan v. County of Chesterfield*, 95 F.3d 1263, 1281 n.21 (4th Cir. 1996). "An employer can also

demonstrate the existence of this clear mutual understanding from employment policies,

practices, and procedures." *Monahan*, 95 F.3d at 1275, n. 12, and 1281, n. 21. Courts also look

at **each** employee's actions with regard to his or her employment and compensation. *See Valerio*

*v. Putnam Assoc. Inc.*, 173 F.3d 35, 39 (1st Cir. 1999).

Further, the "understanding" requirement does not require that the employee understand

the manner in which his or her overtime pay is calculated or the manner in which it is

administered. *Bailey v. County of Georgetown*, 94 F.3d 152, 156 (4th Cir. 1996)("Neither the

regulation nor the FLSA in any way indicates that an employee must also understand the manner

in which his or her overtime pay is calculated."); *Griffin*, 142 F.3d at 717 (finding the FLSA does

not require the "employer to hold an employee's hand and specifically tell him or her precisely

how the payroll system works..."); *Samson*, 242 F.3d at 637 (noting that Section 778.114 "does

not require that the employee know the hours expected to be worked, that the fixed salary is not

to be paid for weeks where the employee performs no work, or any other details of how the

FWW is administered."); *Valerio*, *supra*, at 40 (confirming the narrow reading of clear mutual

understanding, and noting that the FWW method does not require that employees understand

how their overtime is calculated); *Heder v. City of Two Rivers*, 295 F.3d 777, 780 (7th Cir. 2002)

(noting that the clear mutual understanding element is satisfied if the employee and employer

know that the base salary constitutes straight time for overtime hours).

Courts addressing the "understanding" requirement under the FWW method have

unequivocally held that "clear mutual understanding" does **not** mean affirmative assent or

agreement to the employer's use of the FWW method. *Griffin*, *supra*, at 716. Indeed, employees

may even disagree with and "manifest their dislike of the defendant's [FWW method]

compensation plan" and still satisfy the "understanding" requirement. *Friedrich, supra*, at *29-30.

Additionally, courts have rejected the assertion that the "understanding" requirement of the FWW method requires "an employer [to] secure from its employees written acknowledgment indicating that the employees' pay has been explained to them." *Bailey, supra*, 94 F.3d at 156; *Griffin, supra*, 142 F.3d at 716. Such a requirement is "contrary to the plain language of the FLSA and § 778.114." *Bailey, supra*, 94 F.3d at 157.

Similarly, as discussed above, the PMWA allows employers to utilize the FWW method provided there is an "agreement or understanding" between the employer and employee. 34 Pa. Code § 231.43(d). **Pennsylvania courts have interpreted Section 231.43(d)'s "agreement or understanding" requirement in the same manner in which courts have interpreted the "clear mutual understanding" requirement of the FLSA.** *See Friedrich, supra*, at *29-30. Moreover, neither of the two Pennsylvania courts to have squarely addressed the FWW method in the context of Section 231.43(d) required the employer to demonstrate affirmative employee assent to the employer's use of the FWW method. Rather, the focus was on the employee's **understanding** of the employer's alternative compensation system and how it worked. For example, in *Friedrich*, despite the employees' dislike for the employer's compensation system, the court found an "agreement or understanding" existed because the employees understood the mechanics of how the FWW method worked and its application to hours over 40.

Here, the undisputed evidence clearly indicates that Plaintiff knew and understood that her salary was to compensate her for all hours worked in a given workweek, regardless of how few or many. First, Kraft had, and has, a policy and practice of explaining Salary Plus to W2W SRs in Pennsylvania. These explanations came via: (1) Kraft's "Salary Plus Breakout Training

Session" Power Point presentation dated June 2007 (the Salary Plus Presentation); (2) an email from Naomi Sosa dated June 8, 2007 setting forth the Salary Plus communication schedule to SRs; (3) a June 2007 meeting agenda for the Salary Plus Presentation; (4) checklists and information for Retail Sales Managers ("RSMs") regarding the implementation of Salary Plus; and (5) the Salary Plus Acknowledgment Form for newly converted W2W SRs. A brief review of each of these items is provided in the Declaration of Gary Schmidt, filed concurrently herewith, as well as Defendant's Separate Statement of Undisputed Facts, at ¶¶ 10-13.

The standard for a "clear mutual understanding" under the FWW method is simply that employees understand that they were paid a salary regardless of how many hours he or she worked in a workweek. Based on the training these W2W SRs received, there can be no question that these W2W SRs, including Plaintiff, had a "clear mutual understanding" of what the FWW method entailed.

     5.    <u>W2W SRs Received Half-Time Overtime For All Hours Over Forty</u>

The Parties do not dispute that W2W SRs received one-half time for all hours worked over forty in a week. *See* Statement of Undisputed Facts at ¶¶ 16-17.

**C.   <u>Plaintiff Received All Overtime To Which She Was Entitled Between July 1,</u>**
      **<u>2007 And The Present</u>**

As noted above, Plaintiff's work hours under the Salary Plus program were 36.25, 34.5, and 19.5 for the three weeks she worked under that program before going out on disability. *See* Schmidt Decl. at ¶ 13; Statement of Undisputed Facts at ¶ 4. As such, Plaintiff did not work any overtime, and therefore was not entitled to any overtime compensation under Kraft's Salary Plus compensation system. The PMWA requires that all employees "shall be paid for overtime not less than 1½ times the employee's regular rate of pay for all hours in excess of 40 hours in a

workweek." 34 Pa. Code § 231.41. The fact remains that Plaintiff worked **no** hours in excess of

forty in **any** week that she worked under the Salary Plus system (*see* Statement of Undisputed

Facts at ¶ 18), and cannot allege a violation of the PMWA in any form based on Kraft's use of

this system. Without suffering any injury under the PMWA, Plaintiff has no standing to bring

and maintain this lawsuit.[8]

    The Parties agreed to settle the first portion of the Class Period, up through June 30,

2007, and those claims have been dismissed from the current Complaint. Plaintiff has no claims

under the PMWA for the period July 1, 2007 going forward, and thus has no standing to pursue

any remaining claims in this action. This would remain true even were this Court to find that

Kraft's Salary Plus program does not comply with Pennsylvania law. For this reason, Kraft

respectfully requests that this Court enter judgment in favor of Kraft.

## IV.   <u>CONCLUSION</u>

    Kraft's Salary Plus compensation system complies with the requirements of 29

C.F.R. section 778.114. W2W SR hours fluctuate from week to week, yet they receive the same

salary regardless of hours worked. This salary is sufficiently large that the W2W SRs' hourly

equivalent never dips near Pennsylvania's minimum wage requirements. W2W SRs fully

understand the Salary Plus program, and receive overtime at a ½ time rate for all hours worked

over 40 in a week. For these reasons, Kraft's system complies with the Pennsylvania Minimum

Wage Act's section 231.43(d). Two cases have explicitly allowed for the use of the FWW under

the section, and the LLCD has proceeded under the assumption it is permitted as well. The only

---

[8]    The core of the standing question is "whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Warth v. Seldin*, 422 U.S. 490, 498-499 (1975)(*quoting Baker v. Carr*, 369 U.S. 186, 204 (1962)). The plaintiff must show that he or she himself or herself is injured by the challenged action of the defendant. The Supreme Court has held that that "A federal court's jurisdiction therefore can be invoked only when the plaintiff himself has suffered 'some threatened or actual injury resulting from the putatively illegal action..." *Warth*, 422 U.S. at 499 (*quoting Linda R. S. v. Richard D.*, 410 U.S. 614, 617 (1973)).

contrary case explicitly did **not** decide the issue, and was factually distinguishable.  Put simply, pursuant to the available authority, Kraft's Salary Plus program complies with the PMWA.

However, even if it did not, Plaintiff cannot even argue that she is owed unpaid overtime under the PMWA post-June 30, 2007, as she did not work any overtime hours in those weeks, and suffered no injury upon which she has standing to sue.

Either of these reasons independently would be sufficient to grant Kraft's Motion for Summary Judgment.  Kraft therefore respectfully requests that for either or both of these reasons, this Court grant its Motion for Summary Judgment.

Respectfully submitted,

Dated:  December 13, 2011

SHEPPARD MULLIN RICHTER & HAMPTON, LLP

By      */s/ Samantha D. Hardy*
        Samantha D. Hardy, Esq.
        Ashley T. Hirano, Esq.
        (All attorneys admitted *pro hac vice*)

        Attorneys for Defendant.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TERRI L. FOSTER | ) | Civil Action No. 2:09-cv-453 |
| on behalf of herself | ) | |
| and others similarly situated | ) | |
| | ) | **Electronically Filed** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **Jury Trial Demanded** |
| KRAFT FOODS GLOBAL, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on December 13, 2011, I electronically filed the foregoing **DEFENDANT KRAFT FOODS GLOBAL, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Joseph H. Chivers, Esquire          jchivers@employmentrightsgroup.com
John R. Linkosky, Esquire          linklaw@comcast.net
(Attorneys for Plaintiff)

Dated: December 13, 2011          SHEPPARD MULLIN RICHTER & HAMPTON, LLP

By          _/s/ Samantha Hardy_
          Samantha D. Hardy, Esq.
          Ashley T. Hirano, Esq.

          (All attorneys admitted _pro hac vice_)

Attorneys for Defendant.

# EXHIBIT 1



DEPUTY CHIEF COUNSEL
OFFICE OF CHIEF COUNSEL
LABOR LAW COMPLIANCE DIVISION
10TH FLOOR, LABOR & INDUSTRY BUILDING
SEVENTH AND FORSTER STREETS
HARRISBURG, PA 17120

GOVERNOR'S OFFICE OF
GENERAL COUNSEL        717-787-4186   Fax: 717-783-5027  www.dli.state.pa.us



LABOR & INDUSTRY
COMMONWEALTH OF PENNSYLVANIA

February 26, 2003



Mark A. Sereni, Esquire
DIORIO & SERENI, LLP
P.O. Box 1789
Media, PA  19063

**RE:** *Signora v. Liberty Travel, et al.*
Delaware County, C.C.P., No. 95-7834

Dear Mr. Sereni:

On behalf of the Department of Labor and Industry, Office of Chief Counsel, I represent Deputy Chief Counsel Richard Lengler and Investigation Supervisor Joseph Hickey concerning the depositions and other matters relating to this case. I received copies of the subpoenas that you served for the March 11, 2003 depositions. I appreciate that you contacted me in advance, provided these copies to me and that you also considered Mr. Lengler's schedule.

The legal relevancy, necessity and benefit of these depositions are highly questionable because the Department never adjudicated, prosecuted or issued a legally-binding statement on this issue. Further, Mr. Lengler and Mr. Hickey may not be compelled to testify as expert witnesses. The scope of your request is also unreasonably broad. Moreover, you requested documents and testimony that undoubtedly violate the attorney client privilege, the attorney work product rule, and the deliberative process privilege, among other privileges. If these issues, particularly the privilege issues, are not satisfactorily addressed, the Department of Labor and Industry will seek to quash the subpoenas or move for protective orders under Pa. R.C.P. 234.4(b), 4003.1, 4003.3, 4011; 4012.

Apparently, Mr. Lengler and Mr. Hickey are being deposed because they were listed as expert witnesses in this case. Neither Mr. Lengler nor Mr. Hickey consented to being expert witnesses and the Department objects to these Commonwealth employees testifying as witnesses at any proceeding. Use of these Commonwealth employees, as expert witnesses, may also be opposed because it is an unreasonable use of a




Mark A. Sereni, Esquire
February 26, 2003
Page 2

Commonwealth employee for a private cause of action. *See Jistarri v. Nappi*, 549 A.2d 210 (Pa. Super. 1988); Governor's Code of Conduct, 4 Pa. Code § 7.152.

The depositions apparently pertain to Mr. Lengler's November 12, 1998 letter to Judith E. Harris, Esquire containing an interpretation of minimum wages issues and the concept of *fluctuating workweek*. Mr. Hickey sent a letter to Ms. Harris on March 16, 1999 containing the assertion that Liberty Travel would owe no money for overtime if Pennsylvania recognized a *fluctuating workweek*. However, there was no official publication or binding norm concerning this issue in any Department document, the *Pennsylvania Code* or the *Pennsylvania Bulletin*. Commonwealth Documents Law, 45 Pa. C.S. §§ 501-609, 701-732, 901-907; *Lowing v. Public School Employees' Retirement Bd.*, 776 A.2d 306 (Pa. Cmwlth. 2001). Mr. Lengler merely characterized his interpretation as a nonbinding prediction.

Mr. Lengler's and Mr. Hickey's correspondence may only be construed as nonbinding predictions, opinions or interpretations. At most, Mr. Lengler's letters constitute an unofficial summary of law. Mr. Hickey's correspondence is a prediction on the results of an audit based on the "assumption" of Pennsylvania adopting a *fluctuating workweek*.

Mr. Lengler, in his November 12, 1998 letter to Ms. Harris, made it clear that the letter comprises his prediction on the resolution of this issue in Pennsylvania. In a December 30, 1998 letter to you, Mr. Lengler also explained the unofficial and non-binding aspect of his November 12, 1998 letter to Ms. Harris:

Regarding your question of whether I intended my letter to "constitute an official expression" of Department [of Labor and Industry] policy. I am not certain what you mean by that. Has it been published in the Pennsylvania Bulletin or Pennsylvania Code? The answer is no. Has it been cleared with the appropriate Department officials? The answer is yes. Has the Department implemented Part IV [pertaining to *fluctuating workweek*] in a specific situation? The answer is no-I thought that letter **made it clear that I was offering a prediction of how we might deal with the issue in the future. Is my letter binding on Department officials? The answer is no. They could always decide not to follow my predicted course, and perhaps, the state appellate courts will have established binding precedent by that time.**

(Emphasis added)

Mark A. Sereni, Esquire
February 26, 2003
Page 3

The issue of *fluctuating workweek* is a matter of law that requires judicial interpretation and resolution. The Minimum Wage Act does not assign an adjudicative role to the Department in disputes involving overtime. Rather, that role is reserved to the courts. Minimum Wage Act, 43 P.S. §§ 333.112, 333.113.

Much of your request also covers documents and information that are clearly privileged under the attorney-client privilege, the deliberative process privilege and the attorney work product doctrine, among other privileges. All of these privileges apply to Commonwealth attorneys. For example, seeking information on advice that attorneys provide to their client, attorney drafts of letters and legal opinions and internal agency deliberations is prohibited. *See* 42 Pa. C.S. § 5928; Pa. R.C. P. 4003.3; *Commonwealth v. Vartan t/a Independent American Inv.*, 557 Pa. 390, 733 A.2d 1258 (1999); *Tribune-Review Publishing Co. and WPXI v. Dep't of Community and Economic Development*, No. 2541 C.D. 1999 (Pa. Cmlwth., filed January 3, 2003); *Gould v. Aliquippa*, 750 A.2d 934 (Pa. Super 2000); *Joe v. Prison Health Systems, Inc.*, 782 A.2d 24 (Pa. Cmwlth. 2001). Seeking confidential information pertaining to Mr. Lengler's job is also unreasonably intrusive and oppressive in this case. Pa. R.C. P. 4011(b).

The Department objects to the information requested in items, 3,4,5,6,10,11,12 and 13 of the appendix to your subpoenas and to any other item that may violate a lawful privilege. Failure to object to your subpoenas for some of the requested information would constitute an ethical violation of the duties that government attorneys owe to their clients. To the extent that any deposition is still necessary, it also requested that this deposition be held in the Labor and Industry offices in Harrisburg for the convenience of the Commonwealth employees.

If these matters are not satisfactorily resolved within seven days, I will file the appropriate motions with the court to protect our clients' interests. Please contact me if you have any questions or wish to discuss this matter further.

Very truly yours,

James A. Holzman
Deputy Chief Counsel

JAH/

cc:   Judith E. Harris, Esquire
      Richard C. Lengler, Deputy Chief Counsel
      Joseph C. Hickey, Investigative Supervisor